IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CONSOLIDATED RAIL CORPORATION,<br>*Plaintiff*<br><br>v.<br><br>FONDIARIA SAI, S.P.A.,<br><br>*Defendant* | :<br>:<br>:<br>:  CIVIL ACTION<br>:<br>:<br>:  NO. 11-5416<br>:<br>: |

**MEMORANDUM**

PRATTER, J.                                                                                                                                            JULY 27, 2020

**INTRODUCTION**

This near decade-old dispute displays what can sometimes be created when parties pursue a shotgun approach to a matter as to which a well-aimed single effort likely would be more efficient and economical for all concerned. Here, on the basis of an arguably straightforward matter, a Federal Rule of Civil Procedure 12(b)(2) motion, the parties, a freight rail service provider and its alleged insurer, contest the motion like two trains whose only coordinated effort seems to be to derail the other. Because the Court sees Fondiaria's personal jurisdiction challenge as inexorably intertwined with its contentions on the merits of the basic insurance claim, and merits determinations will have to be made in a manner that exceeds the scope of a Rule 12(b)(2) motion, the Court denies the motion for lack of personal jurisdiction.

## BACKGROUND[1]

### I. The at-issue insurance policy

Conrail has sued Fondiaria, an Italian corporation that is the alleged successor-in-interest to Lloyd Italico & L'Ancora, an Italian insurance company, pursuing declaratory relief and a breach of contact claim on the basis that Lloyd Italico issued an umbrella insurance policy to Conrail in the 1970s. Conrail seeks reimbursement under the policy for settlements and judgment payments it has paid related to its liabilities to present and former employees.[2] Conrail alleges the liability policy allegedly issued to it by Lloyd Italico is for $1,000,000 of excess liability coverage in the $20,000,000 to $32,000,000 layer for the policy year. Def.'s Mot. to Dismiss, p. 63. According to Conrail, the policy period extended from April 1978 to April 1979, and the umbrella policy or "certificate" was signed by a "Joseph F. Ambriano" on behalf of "PLAR Group." Court of Common Pleas Op., Ex. 18, Def.'s Mot. to Dismiss, p. 2. A second page also purports to be an Endorsement No. 1 to the umbrella policy, which increases the coverage issued from $500,000 to $1,000,000. *Id.* The endorsement is signed by a "R.A. Browing" on behalf of the "Independence Marine Group." *Id.* A third page that appears to be a second endorsement "sets forth a computation of the earned premium based on Conrail's revenues during the Policy year, which results in an additional premium payment due." *Id.* This endorsement is signed by a "Richard H. Byron for Plar." *Id.* The validity of these documents is at issue in this case.

---

[1] Much of the Background material in this Memorandum comes from the filings of these parties in previous litigation filed and pursued in the Court of Common Pleas in Philadelphia, Pennsylvania. The relationship of that litigation with this action will be addressed elsewhere.

[2] It seeks such reimbursement, along with defense costs, related to payments it made on employee claims of repetitive stress, hearing loss, asbestos-related, and deleterious substance-related injuries.

## II. The relevant procedural history

This is Fondiaria's third motion to dismiss on the basis of a lack of personal jurisdiction in this federal action. Conrail asserts only specific personal jurisdiction, alleging that Fondiaria's predecessor, Lloyd Italico, issued the liability umbrella policy to Conrail, a Philadelphia-based company. Fondiaria's motion again rests on the position that such an insurance policy was never authorized and for legal purposes does not exist. Due to the particular manner in which this case has developed, the previous jurisdictional motions were not decided on the merits of the motions as presented.

While overseeing this case initially, the then presiding judge, Honorable Thomas O'Neill, twice placed the case in suspense, doing so initially in 2012, and noting an ongoing concurrent state litigation in the Court of Common Pleas of Philadelphia County that involved Lloyd Italico and Conrail and the same liability insurance policy at issue in this federal case. Judge O'Neill suspended this action, pending the anticipated determination by the state court on the issue of personal jurisdiction. Suspense Order (Doc. No. 25). On the same date, he denied without prejudice Fondiaria's first motion to dismiss. Order (Doc. No. 24). In 2013, in response to Fondiaria's second motion to dismiss or in the alternative stay the action, Judge O'Neill stayed this case and placed it in civil suspense, issuing an opinion raising abstention issues arising from the pending determination by the state court on whether the challenged insurance policy ever existed. In the state court litigation,[3] filed prior to the federal action, Conrail had sued 55 insurers seeking indemnification for environmental liability for over 30 of its railroad sites in Pennsylvania and other states.[4] Judge O'Neill noted:

---

[3] *Consolidated Rail Corp. v. Ace Property & Casualty Insurance Co., et al.*, Sept. 2004 Term, No. 02638.

[4] The liability related to contamination remediation, clean-up costs, and other expenses related to toxic releases.

3

> No federal issues are implicated in this action[,] and there is no suggestion that the state proceedings will be inadequate to resolve the issue whether defendant issued the policy in question. Indeed, the possibility of interfering in the state court case regarding the same issue is substantial. The fact that different claims are being made under the policy in this action from those Conrail is asserting in the state court action is of no import; if defendant did not issue the policy – and whether defendant did is an essential issue in both cases – Conrail can make no claims under the policy.

Memorandum (Doc. No. 38), p. 3, Nov. 8, 2013.

Then, in the state court action, after the Court of Common Pleas had granted summary judgment in favor of all remaining defendants, including Lloyd Italico, the state appellate court reversed the grant of summary judgment in favor of Lloyd Italico. In doing so, the Superior Court found there was a triable issue as to whether a third-party, pursuant to a principal-agency relationship, could bind Lloyd Italico to the policy.[5]

Ultimately, in December 2018, by agreement of the parties, and after the Pennsylvania Supreme Court had denied Conrail's petition for allowance of appeal, Conrail dismissed the state

---

[5] In reversing the grant of summary judgment and remanding the case for further proceedings, the Superior Court held:

> In order to determine whether Lloyd is required to indemnify Conrail for any 'occurrence' under a binding insurance contract, a finder-of-fact must first decide if a principal-agent relationship existed between Mr. Ambriano and Lloyd. Based on this record, we observe an issue of fact exists with regard to Mr. Ambriano and Lloyd's alleged principal-agent relationship. Because the facts regarding the existence [of such a] relationship are in dispute, the issue is for the fact-finder.

Superior Court Op., Ex. 19, Def.'s Mot. to Dismiss, p. 37.

The Superior Court reasoned "an issue of fact arguably exists regarding the existence of a principal-agent relationship between Mr. Ambriano and Lloyd [because] Mr. Ambriano stated that he understood he was authorized to sign the Lloyd policy; EWI, Conrail's broker, dealt with Mr. Ambriano; Mr. Ambriano was the sole and exclusive agent for all of PLAR's business in the United States; Lloyd was a PLAR member; the majority of the of-record policies issued by PLAR were direct policies; PLAR negotiated policies for individual members; and Mr. Ambriano was highly regarded in the international insurance industry." *Id.* at 36.

4

case remaining against Lloyd Italico because the Superior Court's other rulings effectively precluded any recovery against Lloyd Italico on the environmental claims remaining, regardless of the resolution of the Lloyd Italico policy issue. Stipulation of Discontinuance, Ex. 20 to Def.'s Mot. to Dismiss. The federal action was removed from suspense in 2019.[6]

## DISCUSSION

### I.     The appropriate standard of proof

As an initial matter, the Court notes that at oral argument, and by way of its briefing, Fondiaria has equivocated on the standard it would have the Court apply to the Rule 12(b)(2) motion. Initially, in its motion, Fondiaria had argued that Conrail failed to meet its burden under the *prima facie* case standard typically applied to 12(b)(2) motions. Then, in its reply brief, Fondiaria asserted that because there is full discovery on the issue to be determined, the Court should employ a preponderance of the evidence standard. At oral argument, Fondiaria left the choice between the two standards up to the Court.

This Court has already determined that the preponderance of the evidence standard as to a jurisdictional motion brought pursuant to Rule 12(b)(2) is appropriate only after an evidentiary hearing has been held. *See Atiyeh v. Hadeed,* No. 04-2621, 2007 WL 853816, at *4 (E.D. Pa. Mar. 19, 2007); *see also Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Thus, as a matter of law, because the Court has not held an evidentiary hearing on the motion, the Court finds the higher burden should not be applied. However, as explained below, the Court need not reach the question of whether Conrail has made a *prima facie* case for its assertion of personal jurisdiction.[7]

---

[6]     This litigation was randomly reassigned to this Court in 2017. Judge O'Neill passed away in 2018.
[7]     The Court also finds conducting an evidentiary hearing and applying the higher burden would similarly be inappropriate because the Rule 12(b)(2) motion ultimately seeks determinations more properly made by a jury.

## II. The remainder of the parties' disputes

The parties' disputes are numerous. Fondiaria expends the overwhelming majority of its Rule 12(b)(2) motion seeking the Court's consideration of voluminous documentary evidence, unearthed after years of state court litigation through which it attempts to disprove the existence of the insurance policy under which Conrail sues. In doing so, Fondiaria hopes to disprove personal jurisdiction. The parties dispute the admissibility and weight of the evidence with respect to complex third-party and transnational insurance relationships, with Fondiaria arguing that all of the evidence Conrail could rely on to show the insurance policy exists is hearsay or otherwise inadmissible.

Conrail contends on the basis of numerous preclusion theories[8] that the state court already ruled on the issue of personal jurisdiction, and Fondiaria cannot relitigate the issue here. Conrail also presents its own rebuttal evidence on the liability issue at the heart of this jurisdictional fight, namely, whether the policy in fact does exist for purposes of Lloyd Italico's responsibilities in this action. The parties contest whether as a factual matter, a Mr. Ambriano and/or the other signatories to the insurance certificate and endorsements were authorized to bind Lloyd Italico as its agents.

## III. The motion is an improper guise for liability determinations.

The bottom line dispute between the parties, namely the possible fraudulent nature of the policy certificate, lies outside the scope of a 12(b)(2) motion. At its core, the motion, despite whichever way it is litigated or molded, seeks a determination on the critical merits dispute: whether the underlying umbrella policy exists. The manner in which Fondiaria has teed up the issue of personal jurisdiction could run afoul of Conrail's right to a trial. Fondiaria asks the Court to consider all of the record evidence that presently exists, determine the admissibility of some of

---

[8] It argues issue preclusion, waiver, estoppel, comity, judicial economy, the law of the case, and other theories.

it, weigh the evidence, and conclude that no evidence can raise the inference that any third-party, let alone a certain Mr. Ambriano, was delegated agency authority on behalf of Lloyd Italico sufficient to bind it to the policy alleged.

Our Circuit's court of appeals has stated Rule 12(b)(2) motions "cannot be treated as one[s] for summary judgment[,]" but there are occasions where "it may be necessary for the district court 'to proceed to a decision which impacts on the merits.'" *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir. 1990). However, the appellate court has also cautioned that where such a merits determination may risk usurping the role of the jury, district courts should tread carefully. *See Wade v. Rogala*, 270 F.2d 280, 285 (3d Cir. 1959) (reversing district court's order dismissing the case on jurisdictional grounds and noting that "[t]he necessary choice, except in the flagrant case, where the jurisdictional issue cannot be decided without the ruling constituting at the same time a ruling on the merits, is to permit the case to proceed to trial."); *see also Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 146 (1st Cir. 1995) ("[A]t least in situations in which the facts pertinent to jurisdiction and the facts pertinent to the merits are identical, or nearly so, profligate use of the preponderance method can all too easily verge on a deprivation of the right to trial by jury.").

The Court declines to treat the instant motion as a motion for summary judgment despite Fondiaria's request for the Court to do so at oral argument. Fondiaria's actual request goes farther than Fondiaria may realize, beyond the scope of even a Rule 56 motion. This is because, in part, it would engage the Court in the process of deciding now whether the evidence Conrail seeks to rely on is credible and weighty, so much so that it may withstand ultimate judgment for Fondiaria. These are open issues left for the province of a factfinder. *See Atiyeh, supra*, 2007 WL 853816, at *10.

That the parties persist in vigorously contesting the import of any state court ruling and its preclusive nature is of no matter. Two disputes are worth noting. With respect to the Superior Court's reversal of summary judgment on the issue of the policy's existence, as noted, Judge O'Neill stayed this action pending the state court's determination on that question, and Fondiaria argues that because the Superior Court in effect only denied summary judgment on the issue, no preclusive ruling was ever made. It also contends that a different factual record is present here, due to Conrail's tactical representation that it does not plan to offer testimony from Mr. Ambriano at trial. Thus, argues Fondiaria, estoppel doctrine cannot apply.

The Court appreciates on a theoretical level that the scales may tip against issue preclusion, for example, if the Superior Court indeed relied solely or predominantly on Mr. Ambriano's affidavit in expending its ruling, and in fact, such proof remains absent in the federal record. Perhaps the same conclusion would be rendered if the Court were to determine that an appellate court's reversal of summary judgment does not have preclusive effect. But, a decision against preclusion by any state court ruling here does not alter the ultimate conclusion that Fondiaria's motion seeks a premature decision on the existence of the policy, a determination completely intertwined with the potentially judgment-determinative merits issue in this case. And, to the extent that there is or is not in this factual record proof provided by or about Mr. Ambriano, on the issue of his authority and action, at oral argument Conrail asserted that its decision to call Mr. Ambriano as a witness at trial was a matter of pure trial strategy, maintaining its option to call upon his testimony to add to whatever other record evidence Conrail believes there is or will be on the point at hand. Whether or not the federal record will include Mr. Ambriano's testimony in some form is a decision left for another day.

## CONCLUSION

The parties remain free to litigate, as they see they must, the issue of the existence of the policy, and the multitude of sub-issues they have raised in relation to that issue. But, the procedural manner in which Fondiaria now seeks a ruling on the fundamental question of the policy's existence is improper. Masked as an issue of pure jurisdiction, the motion is not. The Court denies the motion for lack of personal jurisdiction. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE